[Cite as *Carpenter v. Mt. Vernon Gateway, Ltd.*, 2014-Ohio-465.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BARBARA CARPENTER | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 13CA6 |
| | : | |
| MOUNT VERNON GATEWAY, LTD. | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Knox County Court of
                                  Common Pleas, Case No. 11OT08-
                                  0410



JUDGMENT:                         AFFIRMED



DATE OF JUDGMENT ENTRY:           February 5, 2014



APPEARANCES:

For Plaintiff-Appellant:                  For Defendant-Appellee:

DOUGLAS J. BLUE                           GARY A. PIPER
341 S. Third St., Suite 200               3 N. Main St., Suite 500
Columbus, OH 43215                        Mansfield, OH 44902

*Delaney, J.*

{¶1} Plaintiff-Appellant Richard Sollar, Administrator of the Estate of Barbara Carpenter ("the Estate") appeals the April 9, 2013 judgment entry of the Knox County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee Mount Vernon Gateway, Ltd.

## FACTS AND PROCEDURAL HISTORY

{¶2} Barbara Carpenter was a customer of Advance America Cash Advance Center and frequented the business located at a strip mall in Mount Vernon, Ohio. Mount Vernon Gateway, Ltd. owns the property where Advance America is located.

{¶3} Mrs. Carpenter was seventy-one years old and no longer possessed a driver's license. She was driven to Advance America at least once a month. She would ride in the front passenger seat or rear passenger seat. On Saturday, October 2, 2010, Mrs. Carpenter's son, Richard Sollar, drove Mrs. Carpenter to Advance America. Mrs. Carpenter sat in the back seat of the four-door Pontiac Grand Am, behind the driver's seat. The Saturday office hours of Advance America were from 9:00 a.m. to 2:00 p.m. Mrs. Carpenter and her son arrived at Advance America between the hours of 11:00 a.m. to 1:00 p.m.

{¶4} Richard Sollar parked his car in either a handicapped parking spot or a parking spot directly next to the handicapped parking spot. The parking spot was in front of the Advance America business. Mrs. Carpenter used a cane to assist her walking, but she did not have her cane with her on October 2, 2010.

{¶5} Mrs. Carpenter let herself out of the car. On her previous visits to Advance America, Richard Sollar stayed in the car while she went into the store herself.

Mrs. Carpenter had walked in that area before. On this day, Mrs. Carpenter opened the car door, stepped out of the car, and closed the door. She looked down at the ground before she walked and she saw water on the ground. She recalled it had rained earlier in the day. When she stepped forward, she intended to walk through the water. She did not think the water was very deep because she could see the pavement below the water. Nothing was distracting Mrs. Carpenter.

{¶6} Mrs. Carpenter took two steps towards Advance America and fell. She recalled feeling as if she had stubbed her right toe before she fell. Mrs. Carpenter stated the reason for her fall was a depression in the parking lot. Mrs. Carpenter was not able to stop herself from falling and fell flat to the ground. As a result of her fall, Mrs. Carpenter broke bones in her neck requiring two surgeries and rehabilitation.

{¶7} The employees of Advance America saw Mrs. Carpenter fall. They did not see what caused her fall. One employee recalled seeing other people trip in the area Mrs. Carpenter fell. Mount Vernon Gateway, Ltd. was never previously informed that people tripped in the parking lot in front of Advance America, nor was it notified of a depression in the parking lot before Mrs. Carpenter fell.

{¶8} The senior claims representative of Westfield Insurance Company, insurer of Mount Vernon Gateway, Ltd., examined the depression in the parking lot that allegedly caused Mrs. Carpenter's fall. The claims representative averred the depression was 12 inches in diameter and no more than 1.5 in depth, resulting in a 1.5 inch elevation difference from the adjacent asphalt surface. Photographs of the depression that allegedly caused Mrs. Carpenter to fall were attached to the depositions filed in support of summary judgment. The photographs show the depression is located

approximately where the rear automobile tires would rest while parked in the parking spot. The photographs show the cracks causing the depression run the width of the handicapped parking spot and the non-handicapped parking spot.

{¶9} On August 2, 2011, Mrs. Carpenter filed a complaint alleging negligence against Mount Vernon Gateway, Ltd. in the Knox County Court of Common Pleas.

{¶10} On July 9, 2012, Mrs. Carpenter passed away. Richard Sollar, Administrator of the Estate of Barbara Carpenter, was substituted as the plaintiff.

{¶11} On January 24, 2013, Mount Vernon Gateway filed its motion for summary judgment on the claims of negligence raised in the complaint. The Estate responded.

{¶12} The trial court granted the motion for summary judgment in favor of Mount Vernon Gateway on April 9, 2013. It is from this decision the Estate now appeals.

## ASSIGNMENT OF ERROR

{¶13} The Estate raises one Assignment of Error:

{¶14} "I. THE TRIAL COURT ERRED IN HOLDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AND DEFENDANT-APPELLEE WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW."

## ANALYSIS

### Summary Judgment Standard of Review

{¶15} The Estate's sole Assignment of Error argues the trial court erred when it granted summary judgment in favor of Mount Vernon Gateway. We refer to Civ.R. 56(C) in reviewing a motion for summary judgment, which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits,

transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶16} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.  *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996).  The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists.  *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶17} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed.  *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

### *Business Invitee*

{¶18} The issue in this case is whether Mount Vernon Gateway was negligent. In order to establish a claim for negligence, a plaintiff must show: (1) a duty on the part of defendant to protect the plaintiff from injury; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. *Jeffers v. Olexo,* 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).

{¶19} In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287; *Shump v. First Continental–Robinwood Assocs.,* 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994). Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability. *Shump, supra*; *Boydston v. Norfolk S. Corp.,* 73 Ohio App.3d 727, 733, 598 N.E.2d 171, 175 (4th Dist.1991).

{¶20} There is no dispute between the parties that on October 2, 2010, Mrs. Carpenter was a business invitee. An invitee is defined as a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Broka v. Cornell's IGA Foodliner Inc.*, 5th Dist. No. 12CA100, 2013-Ohio-2506, ¶ 20 citing *Gladon, supra* at 315. The owner or occupier of the premises owes the invitee a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that its invitees will not unreasonably or unnecessarily be exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.,* 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers.

*See Jackson v. Kings Island* 58 Ohio St.2d 357, 358, 390 N.E.2d 810 (1979). However, a premises owner is not an insurer of its invitees' safety against all forms of accidents that may happen. *Paschal, supra* at 204. Invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. *See Brinkman v. Ross,* 68 Ohio St.3d 82, 84, 623 N.E.2d 1175 (1993); *Sidle v. Humphrey* 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus.

### *Duty of Mount Vernon Gateway, Ltd.*

#### Open and Obvious

{¶21} The business owner is not an insurer of the customer's safety, but it does owe the business invitee a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn of hidden dangers. Under Ohio law, however, a business owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee that he or she may be reasonably expected to discover them and protect him or her against them. *Sidle v. Humphrey*, 13 Ohio St.2d 45, 48, 233 N.E.2d 589 (1968). In *Armstrong v. Best Buy Company, Inc.,* the Ohio Supreme Court found a premises owner owes no duty to persons entering the premises regarding dangers that open and obvious. 99 Ohio St.3d 79, 2003–Ohio–2573, 788 N.E.2d 1088, paragraph 5 of the syllabus, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph 1 of the syllabus by the court. The rational of the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that owners reasonably may expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{¶22} When considering whether a condition is open and obvious, the court must consider the nature of the condition itself, not the plaintiff's conduct in encountering the condition. *Jacobsen v. Coon Restoration & Sealants, Inc.*, 5th Dist. Stark No. 2011-CA-00001, 2011-Ohio-3563, ¶ 18 citing *Armstrong, supra.* The dangerous condition at issue, however, does not actually have to be observed by the plaintiff to be an open and obvious condition under the law. *Kraft v. Johnny Biggs Mansfield, LLC*, 5th Dist. Richland No. 2012 CA 0068, 2012-Ohio-5502, ¶ 16 citing *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006 AP 09 0054, 2008-Ohio-105. The determinative issue is whether the condition is observable. *Id.*

{¶23} Attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger, and "may create a genuine issue of material fact as to whether a hazard is open and obvious." *Aycock v. Sandy Valley Church of God,* at ¶ 26. Attendant circumstances are factors that contribute to a fall and are beyond the injured person's control. *Kraft*, at ¶ 24. Attendant circumstances do not include any circumstance existing at the moment of a fall, unless the individual was distracted by an unusual circumstance created by the property owner. *Kraft*, at ¶ 24 citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 498, 693 N.E.2d 807 (1st Dist. 1996).

{¶24} The Estate claims the depression in the parking lot was not open and obvious. In reviewing the evidence in a light most favorable to the non-moving party, we find reasonable minds could only conclude the depression in the parking lot was an open and obvious condition that was not concealed and was discoverable by ordinary inspection by those traversing the area.

{¶25} Mrs. Carpenter testified in her deposition that she was a customer of Advance America for six months before the accident. She went to Advance America at least twice a month. Because she did not have a driver's license, Mrs. Carpenter was driven to Advance America and she sat in either the front or rear passenger seat. On the previous occasions Mrs. Carpenter was driven to Advance America, the driver parked in the handicapped parking spot. On the day of the accident, Mrs. Carpenter testified her son parked his car in the handicapped parking spot. Richard Sollar, Mrs. Carpenter's son, could not remember if he parked in the handicapped parking spot or in the spot directly next to the handicapped parking spot on the day of the accident.

{¶26} Mrs. Carpenter testified that on her previous visits to Advance America, she had walked in that area of the accident. The photographs of the accident area show the depression, caused by cracks in the parking lot approximately where the rear tires would rest, runs the width of the handicapped parking spot and non-handicapped parking spot. Pursuant to Mrs. Carpenter's testimony, when her vehicle was parked in either the handicapped parking spot or the non-handicapped parking spot, she walked over the depressed area in the parking lot on her previous visits to Advance America. Under *Sidle v. Humphrey*, the business owner has no duty of ordinary care for an invitee when dangers are known to the invitee. 13 Ohio St.2d 45, 48, 233 N.E.2d 589 (1968).

### Trivial Defect

{¶27} Mount Vernon Gateway argues the depression in the parking lot is a trivial defect because it measured approximately 1.5 inches deep. "The trivial defect doctrine is similar to the open and obvious doctrine." *Neura v. Goodwill*, 9th Dist. Medina No.

11CA0052-M, 2012-Ohio-2351, ¶ 14. "With respect to very trivial or minor imperfections the Ohio Supreme Court has held that minor or trivial imperfections, which are not unreasonably dangerous and are commonly encountered and to be expected, as a matter of law do not create liability on the part of owners or occupiers of private premises toward persons who fall on account of such minor imperfections." *Id.* citing *Helms v. Am. Legion, Inc.,* 5 Ohio St.2d 60, 213 N.E.2d 734 (1966), syllabus.

{¶28} In *Cash v. Cincinnati,* 66 Ohio St.2d 319, 421 N.E.2d 1275 (1981), the Ohio Supreme Court clarified that a court must look at the surrounding circumstances in order to determine whether a defect is insubstantial as a matter of law. *Id.* at 324, 421 N.E.2d 1275. In that case, the Court concluded that reasonable minds could differ as to whether a 1.5 inch deep depression that was 12–14 inches across and spanned at least 3 feet of a crosswalk in a downtown intersection in a major city was a substantial defect. *Id.* at 325, 421 N.E.2d 1275, paragraph one of the syllabus. The Court examined the circumstances surrounding the plaintiff's fall, noting that "[a] pedestrian who approaches such an intersection necessarily has his attention diverted by traffic signal lights, by surrounding vehicular traffic, and by other pedestrian traffic along the same walkway." *Id.* at 324, 421 N.E.2d 1275. "These conditions would tend to increase the danger of such a defect in this location." *Id.*

{¶29} On the day of the accident, Mrs. Carpenter testified she got out of the car, closed the car door, and looked down at the pavement before she took a step towards the Advance America office. Mrs. Carpenter testified that there was nothing distracting her as she got out of the car. When she looked down, she saw a puddle of water and

she could see the pavement below the water.  It had rained earlier in the day.  Mrs. Carpenter intended to walk through the water.  She took two steps and fell.

{¶30}  The record shows there were no attendant circumstances diverting Mrs. Carpenter's attention when she walked.  When reviewing the surrounding circumstances, we conclude as a matter of law the defect was trivial.  Nothing obstructed Mrs. Carpenter's view of the pavement other than a puddle of water.

{¶31} Based on our de novo review of the motion for summary judgment, we find reasonable minds could only conclude Mount Vernon Gateway owed no duty to Mrs. Carpenter pursuant to the open and obvious doctrine and the trivial defect doctrine.

{¶32} The Assignment of Error of Plaintiff-Appellant Richard Sollar, Administrator of the Estate of Barbara Carpenter is overruled.

## CONCLUSION

{¶33} The judgment of the Knox County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.